The Appellate Court of Illinois has reconvened. Thank you, Mr. Burke. Good afternoon, please be seated. Okay, the last case for today is case number 4150112, McCowan v. Department of Human Services. For the appellate we have Dwayne D. Young for the Appellate Judge Schmidt. Mr. Young. Thank you, and may it please the Court, last week there was a letter sent out by the clerk indicating that we should be prepared to adjust the jurisdictional issue. And I guess it's my question is whether at the Court's pleasure should that be dealt with first or just as part of the whole argument? I think it would be prudent to deal with it first. Okay, thank you, I will. This is a case on administrative review, and as part of the original decision in the trial court, there was a remand of a portion of the case on confessed error by the Department. They said that the Roth IRA clearly should not be counted as income. The State's position has been taken at that because that remand required no further decision by the trial court that that brought finality to the case then that the decision should have been appealed at that point in time. That would have been in May of 1914. However, as part of the motion to reconsider, the plaintiff had invoked Section 111 of the Administrative Review Act, which provides very clearly that on the motion of either party, the circuit court shall make findings of fact or state propositions of law upon which its judgment is based. That motion was included with the motion to reconsider. The trial court, sua sponte, disposed of the motion to reconsider, but did not do anything with the motion for the findings made under Section 111 of the Administrative Review Act. And of course there was a significant lapse of time in between the trial court dealing with the motion for reconsideration and then the motion for findings. Do we know how it actually came up eventually, the motion for findings? I think the court indicated in his docket that it was brought to his attention by the plaintiff's attorney, myself, saying, look, that remains to be disposed of here, and brought it to his attention. He then asked the parties to each present a proposed written order. He adopted the state's written findings, and that made the decision final in January of last year. The notice of appeal was clearly filed within that 30-day period. Now, we agree that the Wilkie case decided by the Supreme Court and the Martin case, which is an appellate court decision, which give that Wilkie case gloss, both indicate that if it's only a matter of a ministerial duty, without any discretion whatsoever, then the matter could become final at that point in time. However, in this case, because of the pendency of the motion by the plaintiff for the findings under Section 111, there is no way that the order could have been made final. And to say that it would have, would have been to deprive the plaintiff of the right that he had under the law, under Section 111, and would have deprived this court of the reasoning of the trial court in making its decision. And that applies whether or not, the motion doesn't say it needs to be filed with the original case. It appears to be a post-trial motion. But really, it doesn't matter which way it is. If you analyze the case, all the trial court would have to do then to deprive the litigant of the right to appeal under the Constitution of the State of Illinois would be to make a decision on the merits, and then wait 31 days, and then make those findings. If that were the case, and there was a requirement to appeal, that would just void the appellant's right to appeal. So we'd ask this court to find and hold, as he did in denying the motion to dismiss this appeal, that the matter was not final until the trial court did, in fact, make its findings under Section 111 of the Administrative Review Act. And so, your position that it was not final due to the lack of findings, and at the time that the motion to reconsider was ruled on, that's why we have jurisdiction, and you're not asserting that the revestment doctrine applies at all, is that correct? No, I don't think it's even necessary to reach that, because it's my position, as it is the State's, that the remand for the other purpose, to just correct the confessed error, was of no consequence, and it is of no consequence on jurisdiction before this court, simply because of that. And again, as I indicated, to hold otherwise would be to deprive the appellant and this court of the reasoning of the trial court, which is clearly what's implied by Section 111, that we should have that available for review. How about the cases that say that a motion to simply clarify a court's findings doesn't relieve the appealing party from filing within 30 days from when that order is entered? Well, I think those cases are under the Civil Practice Act. This is specifically under the Administrative Review. There is no such comparable provision under the Civil Practice Act. The trial court need not expand on these findings and spread that of record, but the Administrative Review Act is very explicit. The legislature said, on motion of either party, the trial court must make those findings. Since it was required of the trial court, and it was still pending... Do you know of any cases where the trial court has failed to make those findings, and what happened in those cases? The only cases I find are the same ones that the state referred to as the Wilkie and the Martin case, which those clearly recognize that if there is still a matter, I think the words are, proceedings which are required by the circuit court, other than a ministerial act, obviously contemplates a delay of finality until that provision has been fully complied with. I hope I answered your question. I don't recall any other cases than the other two that they're citing, which are administrative review cases also. What about the 4th District's case of Hansel v. Department of Regulation, which addresses 3-111C? In that case, a claim was made that the trial court did not make the findings of fact as required, but the appellate court disagreed, stating the above provision has not often been interpreted by courts of review. No court of review has reversed a circuit court for failure to comply with that particular provision. I confess I'm not acquainted with that case. I don't know, is it an administrative review case, or is it under the Civil Practice Act? That's 111-C. That is an administrative review case. Do you think it's different when there's, as we have here, not just a failure to lay out the facts on the basis of the finding, but also a pending request? Do you see what I'm saying? It's one thing to say the judge didn't tell us the basis for his reasoning. It's another thing to say, as you're saying here, will we ask the judge to tell us? I agree that they're completely separate, because the provision that was invoked here is one that requires a motion of a party, and that motion was made in this instance. Mr. McGowan, through counsel, requested the trial court to spread of record his reasoning and to make those findings a fact and conclusions of law that are required by the Administrative Review Act. So that motion was filed, and that motion was what was pending, and that was what was brought to the court's attention. Initially, the court acted sua sponte. I suppose it was reasonable to think that the trial court was working on acting on the other part of the post-trial motion that was filed. But after a number of months elapsed, we brought it to his attention. Then is when he called for proposed findings of both parties, which were filed within the 45-day requirement, and then he adopted the states. We submit that on the record that there was a delay of finality of any kind of decision for review until the January date when the trial court did adopt the states, and then the notice of appeal was clearly filed within the 30-day period. So unless you have any other questions, I'd like to move on to the merits. This case is not a Medicaid eligibility case. If you read much of the states brief, it sounds like it has to do with eligibility. This is a post-eligibility case. The question which arises is whether or not the community spouse, which is defined by statute as the spouse who is not institutionalized, can be called upon to contribute to the support of an institutionalized spouse, i.e., one receiving Medicaid or medical assistance already in either a facility, a nursing home. The Medicare Catastrophic Coverage Act of 1988 was passed by the Congress to deal with this precise kind of an issue. It's better known as the Anti-Spousal Impoverishment Act. It has both an income and a resource requirement beyond which the community spouse cannot go. In this instance, the state and the appellant both agree that the resource allowance was $109,560 at all times. The income allowance was $2,739 per month at all times relevant in this case. What happened in this case is Mr. McGowan was called upon to submit his tax returns, which he did. But what they did was they looked at the W-2, the R-1099, rather, that was issued to Mrs. McGowan on her $35,000 traditional IRA. The Roth IRA, of course, they confessed error to because it's not income. The traditional IRA was cashed in by her, and that money then was given to Mr. McGowan under the resource allowance of the $109,560. The state then circled back and said, wait a minute, it appears on the joint tax return, and therefore we're going to attribute it to you as income, which by statute, the rule 89 Illinois Administrative Code 103.20B2 reads very specifically. If the responsible relative has filed a joint tax return, and that's the only possibility of spouses filing joint tax returns, with a nonresponsible relative, only such income as is attributable to the responsible relative will be considered. As a matter of law, we submit that they had to disregard Mrs. McGowan's income from the cashing in of her traditional IRA. And the statute, I don't think, could be much clearer. We've set out in our brief the definitions that apply here, the community spouse, the institutionalized spouse, the regulation, and the state, and this is where it gets really complicated, it makes no sense whatsoever. As they point out on, I think, page 22 of their brief, Carolyn is not a nonresponsible relative of herself. That just doesn't make any sense to me. When I read that, I thought I'm way over my head. So I was hoping maybe during oral argument you would address that, Mr. Schmidt. Is this a term of art within this area of practice, relative of herself or relative of himself? Not that I know of. And we also pointed to the dictionary definitions. But more importantly, in our brief, we set out what the statutory definitions are of a community spouse. The spouse of an institutionalized spouse who continues to reside in the community, whether it's an apartment or house or whatever. The institutionalized spouse is the one receiving care in a facility. And a responsible relative is defined as one legally responsible for the financial support and maintenance of recipients. Carolyn is clearly a recipient. Mr. McGowan is the responsible party, and the question, therefore, just becomes whether or not he falls under the support requirements, which if his income exceeds $2,739 a month, he can be called upon to contribute a portion of his to the care. If he falls below that amount, he can have income from the institutionalized spouse diverted to him to supplement his income up to the $2,739. In this instance, clearly the income, the IRA was attributable to Carolyn. The R-1099 was issued to Carolyn. It was reported on the joint tax return in that fashion. And the statute plainly says it's not to be attributable to the responsible relative, only the income, only his income there. And I think what the state is confusing is the fact that because Carolyn cashed it in and then contributed that sum of money to James so that he could have what Congress awarded him under the Community Spouse Resource Allowance, the $109,560, they confused the two. It was income to Carolyn. It was a resource to James when it was transferred to him. Both fit under not only the resource allowance but the income allowance. And therefore, the state should not have attributed any part of Carolyn's income to James. We submit that the section which we rely upon couldn't be plainer. It plainly says if there's a joint tax return with a nonresponsible relative, that's Carolyn, only the income which is attributed to the responsible relative, that's James, will be considered. That leaves out the traditional IRA. We'd ask that you reverse not only the trial court but the department. Thank you. If you have any questions, you'll have rebuttal, Mr. Schmidt. Thank you. Thank you, Your Honor, and may it please the Court. I'm Assistant Attorney John Schmidt, and I represent the Department of Human Services and its secretary, and we ask that this appeal be dismissed or, in the alternative, that the circuit court be affirmed. The reason for dismissal is that the May 28, 2014 order was a final and appealable order. All it did was remand to the department to perform ministerial tasks, and the ministerial task was simply to deduct the Roth IRA amount, which was $8,469, from the amount of income the department had previously found attributable to Mr. McGowan, which was $67,688. Take that new figure, $59,219, and look at a chart that's in the department's regulations to determine what the monthly support amount would be, and that was $525. There was absolutely no discretion left to the department, so that order was final and appealable. Now, the June 16 motion did reset the 30-day appeal clock, but only that aspect of the motion that was a motion to reconsider the judgment operated to do that. The other part of the motion, the motion for findings of fact, did not, and that's because Supreme Court Rule 303A1 refers to, I believe, it's motions directed against the judgment. The motion to reconsider was the motion to provide. It was one motion, but I think the fact that Mr. McGowan put together two separate requests and one motion shouldn't affect the outcome here. As Your Honor pointed out, ordinarily when cases have held that when a party is just asking for clarification of the judgment, and this is something similar to that. This is, in effect, a motion to explain that part of the motion for finding these facts requested, explaining the judgment. I was just going to say, but this motion was made pursuant to a particular provision of the code that requires the trial court to make these findings to explain its judgment. So doesn't that differ from the motion for clarification under the civil code? Or in civil cases, not agency cases like this? I don't think so, because it's still a situation where the motion, that aspect of the motion at least, is not asking to amend or alter the judgment. It's still, even though, even if there was a requirement that the trial court do so, it was still not a motion directed against the judgment. It would still, I think, be characterized just as something similar to the motion to clarify. How would plaintiff ever get appellate review of the issue regarding this motion under 111C? Well, what he would have needed to do if he really wanted to make sure that was decided, in this case, his motion was filed on June 16th. The motion to reconsider was denied the next day. The circuit court still had jurisdiction for 29 days. Counsel would have been required to get a ruling to get the findings of fact done within those 29 days. So force the court to do it within that time frame. Yes, that's correct, Your Honor. That's correct under these circumstances, that's true. But again, what we're looking at too is whether the May 28th, or the, yes, the May 28th order was final and appealable. The fact that these findings were subsequently requested, and they were requested later, that would not have an impact on whether the May order was final and appealable. That's an after the fact request for the findings of fact. And we're looking to whether the May 28th order was final and appealable. Perhaps if counsel had asked for findings in his administrative review complaint, or at some point before that order was entered, the judge might have been able to say, okay, there is a motion for finding, you have requested findings of fact, my order will not be final until those findings of fact are out there. But because the findings were requested late in the game, the trial judge didn't have an opportunity to do that. So I don't think, again, the motion for findings of fact after the judgment was entered should have an impact here. Counsel's in your position that at the time the trial court made its findings of fact, it didn't even have jurisdiction? Yes. It had lost jurisdiction long before it entered those findings of fact. Yes, that's correct. That's correct. That would be our position. Have you seen R&G Inc. v. Midwest Region Foundation? That's a court-dispute-compelled court case? I confess no, Your Honor. Well, that was written by Justice Steidman, and Justice Kinnick and I concurred in it. And in this case, Justice Steidman talks about the fact that a motion to clarify really isn't a motion that goes towards the judgment. And therefore, in this particular case, the court said that they only had 30 days. They didn't file it from 30 days. The motion to clarify didn't save it, and therefore the Fourth District says we have no jurisdiction. However, towards the end of that opinion, Justice Steidman says that we understand the way to get around this is to simply include in your single motion the request for clarification and a request directed towards the judgment, suggesting that that does then provide the jurisdiction to the appellate court, as long as it's appealed within 30 days from the final disposition. That seems to suggest that what happened here would be permissible under our own precedent in the Fourth District. I'm not sure. Well, I think... I'll give you the site. I don't know if either one of you have seen it. It's 351 L.F. 3rd 318. That's a 2004 case. Anyway, go ahead. I interrupted you. Again, that was 351 L.F. 3rd 318. Thank you, Your Honor. It sounds to me, and again, I haven't read it, so if I'm wrong, please understand that I haven't looked at that decision. But it seems that what Justice Steidman and the court may have been saying in that case was you can't just file a motion to clarify and preserve jurisdiction. But if you add a motion to reconsider, the motion to reconsider would preserve jurisdiction in the circuit court, but I believe that's still consistent with my argument. The motion to reconsider would preserve it only until the motion to reconsider is denied. And if in a case like that, the trial judge had entered an order similar to this motion to reconsider denied, but did not deal with the motion to clarify aspect of it at all, I think the result would be the same as what I'm asking for. And I understand this is a very unusual issue, and I appreciate the court's attention to it. Unless the court has further questions on jurisdiction, I would like to turn briefly to the merits. Actually, we agree with what Mr. Young said early on. This is a case that involves support, a support obligation, which is distinct from whether a person seeking some type of Medicaid benefits qualifies for them. There are different analyses, but I think in some respects, counsel does confuse the two. The community spouse resource allowance that he speaks of, which is $109,560, is something that applies in that initial determination about whether somebody is eligible for Medicaid. And to render a person eligible, the recipient or the potential recipient, who is the person who receives the benefits, can transfer up to that amount of assets to the spouse, and that's to procure eligibility. But that does not answer the question of whether there would potentially be a support obligation from the spouse. And here what we're saying is Carolyn McGowan did transfer the $35,000 IRA to her husband, and that helped her to become eligible for Medicaid. And as a result, she received over $29,000 worth of care. But eventually a $6,300 support allegation was imposed against her husband, and the $35,000 IRA was included in that. And we think that's a reasonable outcome. It's consistent with the Medicaid Catastrophic Coverage Act's goals of preventing impoverishment of community spouses, while at the same time not allowing persons to potentially evade paying that which they can be. In other words, this was a reasonable assessment. Now the reason that amount was included was that it was included as income on the joint tax return that James and Carolyn McGowan filed. And the general rule under the regulation that Mr. Young mentioned, 89 Illinois Administrative Code 103.20B2, is that all the income is considered in determining a support obligation, and that's unless the responsible relative, and everybody agrees James is responsible for Carolyn's care, files a joint tax return with a non-responsible relative. And our position is it's somewhat nonsensical to think of Carolyn as a non-responsible relative, especially of herself. The regulation refers to three types of persons. Responsible relative, James, and recipient who would be Carolyn. As the recipient, she's not a non-responsible relative. She is the recipient. He has filed a joint tax return with the recipient. And so that IRA income can be included in the calculation. And at page 24 in my brief, I wanted to mention I made a mistake in citing the statute that defines recipient. That statute should be 305 ILCS 5-2-9. And a recipient would be someone basically who receives financial aid under the public aid code. And Carolyn would certainly fall within that definition. And to the extent that there is any ambiguity in this regulation, we did argue that it was clear. But if the court finds an ambiguity, some deference should be accorded to the department's determination, because these are the department's regulations, and they do administer this somewhat complex. System of regulations. So we would maintain that IRA, the $35,000 IRA distribution, should count and was properly counted in determining James's support obligation. And counting it puts him well above the $2,739 per month figure that Mr. Young mentioned. It's called the, I believe, the CSMNS. If his income had been below that, there could be no support obligation assessed against him. But if the ING IRA is included, then his income is above that. Or the income at least attributable to him. And if there are no further questions... I don't see any. Thank you, Mr. Schmidt. Just three points. One on the jurisdiction. I think I said it, but I want to be clear. Regardless of whether you include with the Complaint for Administrative Review, or include it in a post-trial motion, the request for the findings under Section 111, if you adopt the state's position, it's to put it in the hands of the trial judge. And I know you all were, and I assume you didn't like to be reversed. But the whole point of it is that if you adopt that position, then you put in the hands of the trial court the ability to rule on the merits, wait 31 days, and then issue the findings. And then you effectively deprive the appellant of the review, which is guaranteed by the Illinois Constitution. With respect to the merits, the state makes a couple obvious, I think, mistakes. First, they suggest that there was a transfer of the IRA from Carolyn to James. That's not so. If you look at page 98 of the common law record, and I included in our appendix to our brief the proposed findings that the court adopted on appendix page 25, the state, the department, and the trial court all acknowledged it was the proceeds of the traditional IRA that were transferred to James under the Community Spouse Resource Allowance. It was no longer income. She recognized the income, and that brings us directly to the statute itself, which the state, I think, would effectively make nonsense of by saying, by making Carolyn a responsible relative for herself is to make section 103.20b.2 pure nonsense, because it reads, if the responsible relative, that's James, had filed a joint tax return with a nonresponsible relative, the only person in the world he could file a joint tax return would be with his spouse, who's the institutionalized spouse. Only such income which is attributable to the responsible relative will be considered. By trying to say that Carolyn somehow is responsible for herself defies logic in the context of this specific provision, which says, for purposes of the support obligation, do not attribute to the community spouse any of the income of the institutionalized spouse. That's effectively and actually what it says. The department did so, it did so wrongfully, and therefore the support obligation was wrongful because Mr. McGowan's support was substantially lower than the Community Spouse Minimum Monthly Maintenance Needs Allowance, which the community spouse is entitled to, even if it requires supplementation by the institutionalized spouse's income under the Medicare Catastrophic Care Act. Thank you, Mr. Young. Thank you, Mr. Smith. The case is submitted. The court stands in recess until further call.